E-Filed 4/22/16

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEALTHY HARVEST BERRIES, INC., <br><br>　　　　Plaintiff, <br><br>　v. <br><br>HEALTH AMERICA FRESH FOODS, INC., et al., <br><br>　　　　Defendants. | Case No. 15-cv-03663-HRL <br><br>**ORDER THAT CASE BE REASSIGNED TO A DISTRICT JUDGE** <br><br>**REPORT AND RECOMMENDATION** <br><br>Re: Dkt. No. 18 |

　　Healthy Harvest Berries, Inc. ("Healthy Harvest") sues Health America Fresh Foods, Inc. ("Fresh Foods") and Vince C. Fratangelo ("Fratangelo") (collectively "Defendants") for violations of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.* Healthy Harvest claims: (1) Fresh Foods committed unfair conduct in violation of 7 U.S.C. § 499b by failing to fully pay for 19 shipments of fresh strawberries, Dkt. No. 1 at 11; (2) Defendants breached their fiduciary duties to Healthy Harvest in violation of 7 U.S.C. § 499e, Dkt. No. 1 at 11-13; and (3) Fresh Foods violated 7 U.S.C. § 499g by failing to comply with a reparation award issued by the USDA, Dkt. No. 1 at 13-14. Healthy Harvest moves the court for default judgment against Fresh Foods and Fratangelo.

　　Not all parties have consented to the undersigned's jurisdiction; the undersigned therefore orders that this case be reassigned to a district judge. The undersigned also recommends, for the reasons stated below, that the motion for default judgment be granted in part and denied in part.

**Background**

　　Healthy Harvest delivered 19 shipments of fresh strawberries to Fresh Foods between April 24, 2012 and June 6, 2012. Dkt. No. 1 at 5-9. Healthy Harvest issued a separate invoice to Fresh Foods for each shipment. Dkt. No. 1 at 5-9. Each invoice stated the number of one-pound

containers delivered, the price per container, and the total amount due upon delivery. Dkt. No. 1 at 5-9; Dkt. No. 18-1 at 3-21. Fresh Foods paid the full invoiced cost for four of the deliveries, but for six of the deliveries Fresh Foods made a partial payment and for nine of the deliveries Fresh Foods made no payment at all. Dkt. No. 1 at 5-9. Altogether, the unpaid balance on the invoices was $125,194.46. Dkt. No. 1 at 9.

Healthy Harvest filed a complaint with the USDA to request "a reparation award under PACA . . . in the amount of $125,194.46." Dkt. No. 1 at 9. Fresh Foods answered and requested a hearing. Dkt. No. 1 at 9. Fresh Foods failed to appear at the hearing, but Healthy Harvest presented evidence and later Fresh Foods submitted supplemental evidence. Dkt. No. 18-1 at 24. The parties also "filed post-hearing briefs and claims for fees and expenses." *Id.* Fresh Foods admitted that it accepted delivery of the strawberries, but argued it had only been "marketing the strawberries on behalf of [Healthy Harvest] in exchange for a sales commission" and the reimbursement of certain fees. Dkt. No. 18-1 at 30.

The presiding USDA Judicial Officer rejected Fresh Foods' argument and found PACA liability based on the following facts: (1) Healthy Harvest and Fresh Foods were licensed PACA dealers, Dkt. No. 18-1 at 24; (2) Fratangelo, the owner of Fresh Foods, made oral contracts with Healthy Harvest on behalf of his company, Dkt. No. 18-1 at 25; (3) Healthy Harvest sold and delivered 19 shipments of fresh strawberries to Fresh Foods and issued an invoice for each sale, Dkt. No. 18-1 at 25-30; and (4) Fresh Foods paid the full cost for four of the deliveries, but for six of the deliveries Fresh Foods made only a partial payment and for nine of the deliveries Fresh Foods made no payment, Dkt. No. 18-1 at 25-30. The Judicial Officer calculated that Fresh Foods owed Healthy Harvest a total outstanding balance of $125,194.46. Dkt. No. 18-1 at 34. He concluded that Fresh Foods' "failure to pay" Healthy Harvest violated PACA's prohibition against unfair conduct and that Healthy Harvest is entitled to the full amount of consequential damages caused by the unfair conduct. Dkt. No. 18-1 at 35 (citing 7 U.S.C. §§ 499b(2), 499e(a)). He also found that $5,790 of Healthy Harvest's fees and expenses were reasonable. Dkt. No. 18-1 at 36-37. The USDA therefore awarded Healthy Harvest as reparations from Fresh Foods: (1) $125,194.46 plus annual interest at the rate of 0.12% "from November 1, 2009, until paid"; (2) the

2

1     $500 filing fee; and (3) $5,790 in reasonable fees and expenses. Dkt. No. 18-1 at 37-38. The

2     USDA set a payment deadline of "30 days from" February 19, 2014. *See* Dkt. No. 18-1 at 37-38.

3     Fresh Foods failed to comply with the reparation award. Dkt. No. 1 at 10. Healthy Harvest filed its complaint in this court and served Defendants, but Defendants have not appeared to litigate this case. The Clerk of Court therefore entered default as to Fresh Foods and Fratangelo. Dkt. No. 15. Healthy Harvest filed a motion for default judgment, including a request for attorney fees and costs, and appeared on February 2, 2016 for the hearing on the motion. Dkt. Nos. 18, 21. On February 5, 2016, Healthy Harvest filed additional declarations in support of the attorney-fees request. Dkt. Nos. 22, 23.

**Legal Standard**

Generally, a party is in "default" when it has failed to "plead or otherwise defend" in a timely fashion against a pleading that seeks "affirmative relief" from that party. Fed. R. Civ. P. 55(a).

Courts have discretion to grant default judgment against a party after the Clerk of Court has entered a default as to that party. *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In *Eitel v. McCool* the Ninth Circuit listed seven factors a district court may consider in deciding whether to grant default judgment: (1) the possibility of prejudice to the claimant; (2) the merits of the substantive claim; (3) the sufficiency of the claimant's pleading; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. 782 F.2d 1470, 1471-72 (9th Cir. 1986). In general, the court should take the claimant's factual allegations to be true, except for the allegations of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

**Discussion**

A district court "has an affirmative duty to" review whether subject-matter and personal jurisdiction exist before entering default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). This court has subject-matter jurisdiction over Healthy Harvest's claims because they arise under

3

federal law. *See* 28 U.S.C. § 1331. The undersigned is also satisfied that this court has personal jurisdiction over Fratangelo and Fresh Foods. The courts within a state have personal jurisdiction for all purposes over individuals who reside within the state and over corporations incorporated within the state. *See*, *e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011). Allegedly, Fratangelo resides in California and Fresh Foods is incorporated under the laws of California. Dkt. No. 1 at 2. The undersigned sees no reason on the record to doubt those allegations. A party also "must be served in accordance with" the Federal Rules of Civil Procedure before a federal court may exercise personal jurisdiction over that party, *see Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982), and Healthy Harvest has filed proof that both Fratangelo and Fresh Foods were duly served. Dkt. Nos. 6, 7. The undersigned therefore believes the court has personal jurisdiction over Defendants and subject-matter jurisdiction over the PACA claims.

Congress enacted PACA in 1930 in order to "prevent[] unfair business practices and promot[e] financial responsibility in the fresh fruit and produce industry." *Farley and Calfee, Inc. v. U.S. Dept. of Agric.*, 941 F.2d 964, 966 (9th Cir. 1991). PACA requires a "dealer" who buys "wholesale" quantities of perishable agricultural commodities—"[f]resh fruits and fresh vegetables"—to hold purchased produce and proceeds from the sale of that produce in a trust "for the benefit" of the seller until that seller receives the "full payment" that was due. 7 U.S.C. §§ 499a(b), 499e(3). The sale of the goods must be "in or in connection with . . . interstate or foreign commerce" for the sale to implicate PACA, but PACA broadly defines "interstate" commerce to include both commerce between states and commerce "between points within the same State[.]" 7 U.S.C. §§ 499a(b)(3), 499b. The delivery of the produce "automatically" creates a PACA trust and the buyer "holds [the trust] assets as a fiduciary" until the buyer fully repays the seller. *In re San Joaquin Food Serv., Inc.*, 958 F.2d 938, 939 (9th Cir. 1992) (quotation mark omitted). The buyer is liable for "unfair conduct" in violation of § 499b if it "fail[s] to maintain" the PACA trust. *See* 7 U.S.C. § 499e(a); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282-83 (9th Cir. 1997) (citing *Frio Ice v. SunFruit, Inc.*, 724 F. Supp. 1373, 1381-82 (S.D. Fla. 1989), *rev'd on other grounds*, 918 F.2d 154 (11th Cir. 1990)). The PACA trust expires unless the seller notifies the

buyer in writing of the seller's intent to preserve the PACA trust; the seller must provide the notice within "thirty calendar days . . . after expiration of" the deadline for payment. 7 U.S.C. § 499e(c)(3). The seller can provide adequate written notice by including specific statutory language on the face of a timely bill or invoice. 7 U.S.C. § 499e(c)(4).

If a corporation breaches its fiduciary duty to preserve PACA trust assets, then the "individual shareholders, officers, or directors of [the] corporation who [were] in a position to control PACA trust assets, and who breach[ed] their fiduciary duty to preserve those assets, may [also] be held personally liable[.]" *Sunkist*, 104 F.3d at 283. An individual is "responsibly connected" to a corporation that violated PACA if the individual was an "officer, director, or holder of more than" ten percent of the corporate stock and he fails to establish by a preponderance of the evidence that he was "not actively involved in the activities" that resulted in a violation of PACA. 7 U.S.C. § 499a(b)(9).

A seller may file a complaint with the Secretary of Agriculture to request a review of whether a buyer should pay a "reparation award" to remedy unfair conduct committed in violation of § 499b. 7 U.S.C. § 499f(a)(1). If the USDA holds "a hearing" and "determines" the buyer is liable, then the Secretary "shall . . . order . . . the offender" to pay the damages, the filing fee for the administrative proceedings, and reasonable fees and expenses by a "fixed" date. 7 U.S.C. §§ 499e(a), 499g(a). If a party fails to "pay the reparation award" issued by the USDA, then the seller may "petition" a United States district court to enforce the PACA liability. 7 U.S.C. § 499g(b). Any such enforcement suit "shall proceed in all respects like other civil suits for damages, except that the findings and orders of the Secretary shall be prima-facie evidence of the facts therein stated, and the petitioner shall not be liable for costs in the district court[.]" *Id.* The claimant is also entitled to "a reasonable attorney's fee" if it ultimately prevails. *Id.*

Healthy Harvest has fairly pled meritorious claims against Fresh Foods. The reparation award issued by the USDA provides "prima-facie evidence of the facts . . . stated" in that award, *see* 7 U.S.C. § 499g(b), and Healthy Harvest's pleadings closely track the detailed factual findings in the award. The facts alleged, when taken as true, show that: (1) Healthy Harvest and Fresh Foods made 19 oral contracts for the sale and delivery of fresh strawberries; (2) Healthy Harvest

5

and Fresh Foods were both licensed PACA dealers; (3) the strawberries were shipped through interstate commerce as PACA defines it; (4) Fresh Foods underpaid or totally failed to pay for several shipments; (5) Healthy Harvest preserved its trust rights under PACA by including specific statutory language on the faces of its timely invoices; and (6) Fresh Foods failed to comply with a reparation award the USDA subsequently issued. Dkt. No. 1 at 5-10. The undersigned believes these well-pled allegations—a PACA dealer bought fresh fruits that traveled through interstate commerce, but the buyer failed to pay fully and failed to comply with a reparation award after the seller preserved its trust rights—establish Fresh Foods is liable for unfair conduct, breach of fiduciary duty, and failure to comply with a reparation award. *See*, *e.g.*, *Mission Produce, Inc. v. Organic Alliance, Inc.*, 5:15-cv-01951-LHK, 2016 WL 1161988 at 6-7 (N.D. Cal. March 24, 2016). Likewise, the details contained in the reparation award establish a sufficient evidentiary basis to conclude Healthy Harvest suffered $125,194.46 in damages as the result of Fresh Foods' unfair conduct, Dkt. No. 18-1 at 23-30.

      The undersigned also believes Healthy Harvest has fairly pled facts which, when taken as true, show Fratangelo breached a fiduciary duty. Healthy Harvest alleges Fratangelo "is the sole owner, shareholder and director of [Fresh Foods]" and that he "controls or, at the time of the events alleged . . . , controlled the day-to-day operations of" Fresh Foods. Dkt. No. 1 at 4. The USDA Judicial Officer found that Fratangelo was the "owner" of Fresh Foods and that Fratangelo had personally negotiated the sales contracts with Healthy Harvest on behalf of his company. Dkt. No. 18-1 at 25. The USDA also deemed Fratangelo to be "responsibly connected" to Fresh Foods, Dkt. No. 18-2 at 2; this reflects the conclusion of the USDA that Fratangelo had failed to demonstrate "by a preponderance of the evidence that [he] was not actively involved" in the unfair conduct committed by Fresh Foods, *see* 7 U.S.C. 499a(b)(9). The undersigned is therefore satisfied that Healthy Harvest has pled facts which, when taken as true, show Fratangelo has become "personally" liable for Fresh Foods' PACA liability—Fratangelo was an "individual shareholder[] . . . in a position to control PACA trust assets" but he "breach[ed] [his] fiduciary duty to preserve" and repay those assets. *See Sunkist*, 104 F.3d at 283; *see also Mission Produce, Inc.*, 2016 WL 1161988 at 7, 12.

The other *Eitel* factors also support entry of default judgment. Healthy Harvest would be unfairly prejudiced if the court did not enter a default judgment because the lack of participation by Defendants leaves Healthy Harvest without any other realistic avenue for obtaining relief. The money at stake in this case is significant—Healthy Harvest requests $150,206.67 in total—but Defendants have received fair notice of what they stand to lose here. Dkt. Nos. 6, 7. There is no evidence that Defendants have failed to appear due to excusable neglect. The possibility of a dispute concerning material facts is low; Healthy Harvest's allegations are detailed and internally consistent, and the reparation award provides prima-facie evidence of those facts. The Federal Rules of Civil Procedure favor judgments on the merits, but Defendants' failure to participate in this case renders such a decision impossible. The undersigned also believes default judgment is particularly fair and appropriate where, as here, the defendants participated in an underlying USDA proceeding but then declined to participate in the subsequent enforcement suit against them. *See* Dkt. No. 18-1 at 23, 30-31.

The undersigned turns to the amount of interest, attorney fees, and costs that Healthy Harvest should receive if it prevails in this enforcement case. Healthy Harvest cites cases that suggest it might be entitled to claim prejudgment interest based on an annual interest rate of 12% because that rate was contractually established in the invoices Healthy Harvest sent to Fresh Foods. *See*, *e.g.*, *Middle Mt. Land & Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220, 1222-23 (9th Cir. 2002). Healthy Harvest, however, specifically requests that prejudgment interest be based on a calculation contained in the reparation award—annual interest of 0.12% applied to the $125,194.46 in damages "from November 1, 2009 until" the date of judgment. *See* Dkt. No. 18 at 26; Dkt. No. 18-1 at 37. The undersigned asked counsel at the hearing on this motion whether Healthy Harvest had intended to request prejudgment interest calculated with the contractual interest rate of 12% rather than 0.12%; counsel affirmed that Healthy Harvest seeks only to enforce the calculation contained in the reparation award. The undersigned notes that district courts have "broad discretion to award prejudgment interest to PACA claimants," *see*, *e.g.*, *Middle Mt. Land & Produce, Inc.*, 307 F.3d at 1225-26; the undersigned therefore recommends that Healthy Harvest receive prejudgment interest at the requested annual rate of 0.12%.

1  The undersigned believes, however, that the record contains no basis for the USDA's
2  decision to calculate interest on the damages as if those damages had all occurred on "November
3  1, 2009[.]" *See* Dkt. No. 18-1 at 37. Healthy Harvest did not initially suffer damages until April
4  24, 2012, and Healthy Harvest's damages accumulated in a series of transactions spread across
5  several months. Dkt. No. 18-1 at 25-30. The undersigned calculates that the interest due on the
6  growing unpaid balance was $4.09 by the date of the final sale, as charted out below according to
7  a 0.12% annual interest rate applied during a leap year to the growing balance:

| Invoice | Date | Balance Due | Balance Subtotal | Days Since Last Sale | Interest Accrued | Interest Subtotal |
|---|---|---|---|---|---|---|
| 1317 | 4/24/2012 | $1,364.16 | $1,364.16 | | | |
| 1318 | 5/3/2012 | $6,220.80 | $7,584.96 | 9 | $0.04 | $0.04 |
| 1320 | 5/4/2012 | $237.60 | $7,822.56 | 1 | $0.02 | $0.07 |
| 1303 | 5/9/2012 | $108.00 | $7,930.56 | 5 | $0.13 | $0.19 |
| 1307 | 5/17/2012 | $7,255.25 | $15,185.81 | 8 | $0.21 | $0.40 |
| 1308 | 5/18/2012 | $2,268.00 | $17,453.81 | 1 | $0.05 | $0.45 |
| 1309 | 5/21/2012 | $11,723.40 | $29,177.21 | 3 | $0.17 | $0.62 |
| 1310 | 5/24/2012 | $17,496.00 | $46,673.21 | 3 | $0.29 | $0.91 |
| 1311 | 5/29/2012 | $18,954.00 | $65,627.21 | 5 | $0.77 | $1.68 |
| 1312 | 5/30/2012 | $4,362.50 | $69,989.71 | 1 | $0.22 | $1.90 |
| 1313 | 5/31/2012 | $7,093.75 | $77,083.46 | 1 | $0.23 | $2.12 |
| 1314 | 6/1/2012 | $14,175.00 | $91,258.46 | 1 | $0.25 | $2.37 |
| 1315 | 6/2/2012 | $13,200.00 | $104,458.46 | 1 | $0.30 | $2.67 |
| 1316 | 6/5/2012 | $15,552.00 | $120,010.46 | 3 | $1.03 | $3.70 |
| 1327 | 6/6/2012 | $5,184.00 | $125,194.46 | 1 | $0.39 | $4.09 |

19  *See* Dkt. No. 18-1 at 34. The undersigned therefore recommends that prejudgment interest
20  be paid according to a corrected version of the calculation in the USDA reparation award: $4.09
21  plus the additional interest that has accrued on the unpaid balance of $125,194.46 at an annual
22  interest rate of 0.12% applied from June 6, 2012 to the date of judgment.
23  The undersigned also recommends awarding the full amount of fees and costs that were
24  awarded by the USDA when Healthy Harvest prevailed in the USDA proceedings. The Judicial
25  Officer reviewed a request for $5,580 "of duly itemized fees and expenses incurred in preparation
26  for the hearing" and found those "fees and expenses to be reasonable[.]" Dkt. No. 18-1 at 36. He
27  also found that $210 "in fees and expenses" were "reasonabl[y]" incurred "in connection with
28  attendance at [the] hearing[.]" Dkt. No. 18-1 at 36. Healthy Harvest was entitled as the prevailing

United States District Court
Northern District of California

party to recover "reasonable fees and expenses incurred in connection" with the hearing, *see* 7 U.S.C. 499g(a), and the Judicial Officer's findings provide "prima-facie evidence" that Healthy Harvest incurred $5,790 in fees and expenses which were reasonable, *see* 7 U.S.C. 499g(b). The "reasonable fees and expenses" awarded by the Judicial Officer are part of the enforceable "reparation" award. *See* 7 U.S.C. § 499g(a). Healthy Harvest is also entitled, as stated by the USDA, to recover the $500 filing fee that it paid to begin the USDA proceedings. Dkt. No. 18-1 at 35 (citing 7 U.S.C. § 499e(a)). The undersigned therefore recommends awarding Healthy Harvest $6,290 for compensable fees and costs incurred during the USDA proceedings.

Healthy Harvest also requests $245.70 in "recoverable costs[.]" Dkt. No. 18 at 29. Thomas A. Vogele ("Vogele"), counsel for Healthy Harvest and principal of Thomas Vogele & Associates, APC ("TVA"), supports the request only by declaring that TVA spent $245.70 on "recoverable . . . filing fees" during "this action[.]" Dkt. No. 18 at 39. It is unclear to the undersigned which "filing fees" Vogele has in mind—Healthy Harvest paid a single filing fee of $400 to begin this case, Dkt. No. 1, and the record does not seem to reflect the payment of any other filing fees. The undersigned recommends denying this request for lack of factual support that would permit the court to independently review whether the requested costs are, in fact, recoverable.

Finally, the undersigned recommends an award of $17,400 for reasonable attorney fees incurred during this case. Healthy Harvest is statutorily entitled to recover "reasonable" attorney fees if it prevails in this enforcement suit. 7 U.S.C. 499g(a). Courts in the Ninth Circuit calculate a reasonable attorney fee with the lodestar method: multiply "the number of hours . . . reasonably expended on the [case] by a reasonable hourly rate." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). Healthy Harvest bears the burden to show its requested hourly rates are "in line with the prevailing market rate" in this district, *see Carson v. Billings Police Department*, 470 F.3d 889, 891 (9th Cir. 2006) (citation omitted); it is ordinarily sufficient to submit attorney declarations that show the requested hourly rates are in accord with "prevailing fees in the community[] and rate determinations in" similar cases, *see United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Vogele's first declaration describes the legal work that was billed to Healthy Harvest in this case. Dkt. No. 18 at 37-39. Vogele also submitted a supplemental declaration to assert what the prevailing market rates are in this district for work on PACA claims. Dkt. No. 22. Vogele asserts on the basis of his experience that, in comparison to people of comparable skill and experience who have worked on similar cases in this district, it is reasonable here to bill: (1) $400 per hour for his own work; (2) $400 per hour for the work of fellow TVA shareholder Timothy M. Kowal; (3) $350 per hour for the work of TVA associate Brendan M. Loper; and (4) $150 per hour for the work of TVA paralegal Angela M. Brown ("Brown"). Vogele also cites three PACA cases where this court found similar hourly rates to be reasonable. *Sequoia Sales, Inc. v. P.Y. Produce, LLC*, 10-cv-05757-CW-NJV, 2011 WL 3607242 at 9 (N.D. Cal. Jul. 29, 2011) (finding rates between $285 and $350 to be reasonable); *Greenfield Fresh, Inc. v. Berti Produce-Oakland, Inc.*, 14-cv-01096-YGR, 2015 WL 1160584 at 5 (N.D. Cal. Mar. 13, 2015) (finding rates between $275 and $375 to be reasonable); *Tom Ver LLC v. Organic Alliance, Inc.*, 13-cv-03507-LHK, 2015 WL 6957483 at 13 (N.D. Cal. Nov. 11, 2015) (finding rates between $310 and $400 to be reasonable).

Healthy Harvest also submitted a corroborating declaration from Michael J. Harrington, a lawyer who practices in Salinas. He declares: (1) his own practice "involves agricultural . . . transactions"; (2) he has been practicing in this district for four years; and (3) in his "estimation . . . the rates TVA seeks . . . are reasonable and comparable to rates charged by other attorneys and paralegals" in local "PACA enforcement" cases. Dkt. No. 23 at 2. The undersigned is persuaded, on the basis of the information contained in the supporting declarations, that the requested lodestar hourly rates are reasonable.

The undersigned is also persuaded, for the most part, that the work billed to Healthy Harvest in this case was reasonably undertaken. Vogele's initial declaration accounts for each billed hour or partial-hour for which compensation is requested as part of an attorney-fees award. The billed hours include time spent: (1) drafting or revising documents that either initiated this case or else were reasonably necessary in the further prosecution of this case; (2) researching pertinent case law; and (3) managing administrative issues that arose in this case. *See* Dkt. No. 18 at 37-39. The undersigned, upon review of Vogele's declaration, is satisfied that nearly all of the

work billed by TVA was reasonably undertaken in support of Healthy Harvest's case.

The undersigned believes, however, that one single hour of work described by Vogele was not reasonably undertaken. Brown spent that hour "drafting" a document Healthy Harvest filed to consent to the undersigned's jurisdiction. Dkt. No. 18 at 38. Brown, however, did no more than slightly modify the simple one-page consent-or-declination template provided by this court. *See* Dkt. Nos. 8, 9. The undersigned does not believe it is reasonable to spend one hour on that work.

The undersigned therefore recommends denying the attorney-fees request with respect to one of the hours worked by Brown, but otherwise recommends that the request be granted—this would result in an award of $17,400 for reasonable attorney fees.

**Conclusion**

The undersigned believes: (1) Healthy Harvest has fairly pled meritorious claims against Fresh Foods for unfair conduct, breach of fiduciary duty, and failure to comply with a USDA reparation award in violation of PACA; (2) Healthy Harvest has also fairly pled a meritorious claim against Fratangelo for a breach of fiduciary duty; and (3) the other *Eitel* factors support entry of default judgment here. The undersigned also believes Healthy Harvest is entitled to receive the damages it requests, prejudgment interest on its damages, and most of the costs and fees it requests. The undersigned therefore recommends an entry of judgment in favor of Healthy Harvest and against Fresh Foods and Fratangelo for: (1) $125,194.46 in damages; (2) prejudgment interest in the amount of $4.09 plus the additional interest that has accrued on the damages at an annual rate of 0.12% since June 6, 2012; (3) $6,290 in reasonable fees and costs awarded by the USDA as part of its reparation award; and (4) $17,400 in attorney fees reasonably incurred in this enforcement suit. The clerk shall serve this report and recommendation on Defendants and they shall have 14 days after receipt of service to file any objections.

**SO ORDERED AND RECOMMENDED.**

Dated: 4/22/16

_____
HOWARD R. LLOYD
United States Magistrate Judge

11